THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| BEDROCK QUARTZ SURFACES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ROCK TOPS HOLDINGS LLC d/b/a ROCK TOPS, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER DENYING [19] DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br><br> Case No. 2:23-cv-00310-DBB-CMR <br><br> District Judge David Barlow |

Before the court is Defendant Rock Tops Holdings LLC's ("Rock Tops") motion for summary judgment, which seeks to dispose of Plaintiff Bedrock Quartz Surfaces, LLC's ("Bedrock") claims for trademark infringement under federal law, deceptive trade practices under state law, and trademark dilution under state law.[1] For the following reasons, the court denies Rock Tops' motion.

## BACKGROUND

Both Bedrock and Rock Tops are in the business of marketing and selling countertops and related products in Utah.[2] Bedrock has been operating under the name "Bedrock Quartz" since around 2003, and since that time it has spent over $4 million in advertising related to that mark.[3] Beginning on May 11, 2022,[4] Rock Tops began using Google Ads to market a new Park

---

[1] Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. 19.
[2] Decl. of Alan Jorgensen in Support of Bedrock Quartz's Opp'n to Def.'s Mot. for Summ. J. ("Jorgensen Decl.") ¶¶ 3–4, ECF No. 30-2; Decl. of Blair Schmoekel ("Schmoekel Decl.") ¶¶ 2–3, ECF No. 19-1.
[3] Jorgensen Decl. ¶¶ 5, 12.
[4] July 9, 2023 Email from Carole Cross to Jamie Hamilton, ECF No. 30-7 at 6; *see also* Jorgensen Decl. ¶ 13.

City, Utah location with the term "Bedrock Quartz."[5] The following are two examples of such

advertisements.

Ad · https://www.rocktopssurfaces.com/park_city/countertops   ⋮   (385) 325-3196

## Bedrock Quartz - Countertops Promotion

Our Countertops & Sinks Are Always Available at Affordable Price, Only at Rock Tops Utah. At
Rock Tops We Are Committed to Helping Builders and Re-Modelers. Tub Decks.

**In Stock Countertops**
Browse Our Granite & Quartz
Online Catalog

**Contact Us**
Thanks For Your Interest
In Our Products & Services

**Free Estimates**
Schedule Your Free
In Home Estimate Now

**Location & Map**
Visit Our Showroom
Or Call Us

Ad · https://www.rocktopssurfaces.com/park_city/countertops   ⋮   (385) 325-3196

## Bedrock Quartz - Visit Our New Park City Store

At Rock **Tops** We Are Committed to Helping Builders and Re-Modelers. We Are Committed to
Selling the Best **Countertops** & Sinks at Affordable Prices. Learn More! In Stock Granite &
**Quartz** Backsplashes. Water Jet Fabrication. Tub Decks. Shower Surround.

**Granite/Quartz Catalog**
In Stock Granite
Quartz Catalog

**Free Estimates**
Schedule Your Free
In Home Estimate Now

**Location & Map**
Visit Our Showroom
Or Call Us

**Contact Us**
Thanks For Your Interest
In Our Products & Services

---

[5] *See* Schmoekel Decl. ¶¶ 3–4.

Google Ads operate through Dynamic Keyword Insertion ("DKI").[6] In general, DKI generates ad headlines automatically based on a user's search results on Google.[7] A portion of the headline can be text that does not change, while other portions may be keywords that change depending on a user's search.[8] This allows the ad headline to closely match a user's search results.[9] This differs from traditional search results, which may return results for a given search, but which do not alter the text of the result based on the search.[10]

The record reflects that an employee of Rock Tops, using the email address marketing@rocktopssurfaces.com, added "bedrock quartz" to Rock Tops' Google Ads account.[11] On September 12, 2022, Rock Tops' marketing agency received an email from Rock Tops that suggested that Rock Tops was looking to make adjustments to its ad campaigns to better compete with Bedrock.[12] On September 14, Rock Tops emailed its marketing agency to note that it was aware of Google Ads displaying the "Bedrock Quartz" trademark, and asking for those ads to be removed.[13] However, that email expressly directed the marketing agency to "keep them as a keyword."[14] On November 16, 2022, counsel for Bedrock sent Rock Tops a demand letter, requesting that Rock Tops cease using the term "Bedrock Quartz" in its Google Ads.[15] The next day, Rock Tops' marketing agency added the term "Bedrock Quartz" as a negative

---

[6] *See* Videoconference Dep. of Carole Cross ("Cross Dep.") 12:5–17:5, ECF No. 30-4; *see also* About Keyword Insertion for Your Ad Text, Google, https://support.google.com/google-ads/answer/2454041?hl=en [https://perma.cc/JN59-H3YW] (last visited July 31, 2024).

[7] *See* sources cited *supra* note 6.

[8] *See* sources cited *supra* note 6.

[9] *See* sources cited *supra* note 6.

[10] *See* Cross Dep. 35:25–36:19.

[11] July 9, 2023 Email from Carole Cross to Jamie Hamilton; *see also* Cross Dep. 22:11–25:6.

[12] Cross Dep. 28:8–29:22.

[13] Sept. 15, 2022 Email from James Kearl to Jamie Hamilton and Mandy Kaur, ECF No. 38-1.

[14] *Id.*

[15] Nov. 16, 2022 Letter from Jared J. Braithwaite to Rock Tops, ECF No. 30-8.

keyword.[16] A Negative Keyword Search ("NKS") permits an advertiser to exclude certain keywords from advertisements.[17]

The record indicates that "bedrock quartz" refers to a product sold by Rock Tops' supplier.[18] However, Rock Tops itself never sold that product.[19]

Bedrock filed suit on May 10, 2023.[20] In December, the court granted Rock Tops judgment on the pleadings on Bedrock's claim for unfair competition under Utah law.[21] Now, Rock Tops moves for summary judgment on Bedrock's remaining claims.[22] This motion was fully briefed on May 15, 2024.[23]

## STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[24] "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented."[25] Where the moving party does not bear the ultimate burden of proof on an issue at trial, the party may simply point out to the court the lack of evidence to support the nonmoving

---

[16] *See* July 9, 2023 Email from Carole Cross to Jamie Hamilton.
[17] Schmoekel Decl. ¶ 18; <u>About Negative Keywords</u>, Google, https://support.google.com/google-ads/answer/2453972?hl=en [https://perma.cc/678V-CV22] (last visited July 31, 2024).
[18] *See* Dep. of Blair Schmoekel ("Schmoekel Dep.") 51:11–53:17, ECF No. 32-1.
[19] *Id.* 55:15–55:22; Def.'s Resp. to Pl.'s Second Set of Interrogatories and Requests for Production of Documents, Resp. Nos. 13, 14, ECF No. 30-6.
[20] Compl., ECF No. 1.
[21] *See* Mem. Dec. & Order Granting in Part and Denying in Part [15] Def.'s Mot. for J. on the Pleadings, ECF No. 18.
[22] Def.'s Mot.
[23] *See* Bedrock Quartz's Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n"), ECF No. 30; Reply in Support of Mot. for Summ. J. ("Def.'s Reply"), ECF No. 38.
[24] Fed. R. Civ. P. 56(a).
[25] *Doe v. Univ. of Denver*, 952 F.3d 1182, 1189 (10th Cir. 2020) (quoting *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015)).

4

party's case.[26] The burden then shifts to the nonmoving party to demonstrate that there is a

genuine dispute of material fact for trial.[27] But when the moving party bears the ultimate burden

of proof at trial, the party must make an initial showing such that "no reasonable trier of fact

could find other than for the moving party."[28]

**DISCUSSION**

### I.  Lanham Act

Rock Tops moves for summary judgment on Bedrock's trademark infringement claim

under Section 43 of the Lanham Act.[29] In addition, it seeks summary judgment on its fair use

defense.[30]

### A.  Trademark Infringement

Section 43(a)(1) of the Lanham Act states:

Any person who, on or in connection with any goods or services, or any container
for goods, uses in commerce any word, term, name, symbol, or device, or any
combination thereof, or any false designation of origin . . . which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the
   affiliation, connection, or association of such person with another person, or
   as to the origin, sponsorship, or approval of his or her goods, services, or
   commercial activities by another person,

. . .

shall be liable in a civil action by any person who believes that he or she is or is
likely to be damaged by such act.[31]

---

[26] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).
[27] *Id.* at 324.
[28] *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015) (quoting *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986)).
[29] Def.'s Mot. 5–16.
[30] *Id.* at 16–17.
[31] 15 U.S.C. § 1125(a)(1).

Section 43(a), as opposed to Section 32, applies when a mark is unregistered.[32] The elements of a claim under Section 43(a) are: "(1) that the plaintiff has a protectable interest in the mark; (2) that the defendant has used 'an identical or similar mark' in commerce; and (3) that the defendant's use is likely to confuse consumers."[33] Rock Tops challenges only the third element—likely consumer confusion.[34]

There are several types of customer confusion.[35] The variety at issue here, initial-interest confusion, "results when a customer seeks a particular trademark holder's product and instead is lured to the product of a competitor by the competitor's use of the same or a similar mark."[36] "[I]mproper confusion occurs even if the consumer becomes aware of the defendant's actual identity before purchasing the product."[37] Likelihood of confusion is a question of fact,[38] which the Tenth Circuit resolves through application of six, non-exhaustive, factors (known as the *King of the Mountain* factors): "the degree of similarity between the marks"; "the intent of the alleged infringer in adopting its mark"; "evidence of actual confusion"; "the relation in use and the manner of marketing between the goods or services marketed by the competing parties"; "the degree of care likely to be exercised by purchasers"; and "the strength or weakness of the

[32] *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) ("[I]t is common ground that § 43(a) protects qualifying unregistered trademarks and that the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a)."); *see also* 15 U.S.C. §§ 1052, 1114(1).
[33] *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1239 (10th Cir. 2013) (citations omitted).
[34] *See* Def.'s Mot. 6–16.
[35] *1-800 Contacts*, 722 F.3d at 1238–39.
[36] *Id.* at 1239 (quoting *Austl. Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1238 (10th Cir. 2006)).
[37] *Id.*; *see also* 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 25A:7 (5th ed. May 2024 Update) (distinguishing initial interest confusion from distracting or diverting targeted advertisements).
[38] *John Allan Co. v. Craig Allen Co. LLC*, 540 F.3d 1133, 1138 (10th Cir. 2008); *see also Video Gaming Techs., Inc. v. Castle Hill Studios LLC*, No. 17-cv-454, 2018 WL 284991, at *6 (N.D. Okla. Jan. 3, 2018); *Health Grades, Inc. v. Robert Wood Johnson Univ. Hosp., Inc.*, 634 F.Supp.2d 1226, 1241 (D. Colo. 2009).

marks."[39] The weight given to each of these factors may vary depending on the record and are not to be applied mechanically.[40]

### 1.    Evidence of Actual Confusion

In most cases, "[a]lthough not necessary to prevail on a trademark infringement case, evidence of actual confusion in the marketplace may be the best indication of likelihood of confusion."[41] Rock Tops argues only that Bedrock lacks any evidence of actual confusion.[42] However, there is such evidence in the record. An internal email from the head of Rock Tops' marketing agency provides data from Google Ads: Rock Tops' ads using the term "bedrock quartz" were seen by 2,518 people and 161 people clicked on the ads, for a click through rate of 6.4%.[43] While this evidence is weak and may weigh against a finding of actual confusion,[44] Rock Tops made no argument addressing the data or its implications. The only argument it did make was incorrect based on the record before the court. Accordingly, the court considers this factor neutral.

---

[39] *1-800 Contacts*, 722 F.3d at 1239 (quoting *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089–90 (10th Cir. 1999)).

[40] *Id.*

[41] *Vail Assocs., Inc. v. Vend-Tel-Co., Ltd.*, 516 F.3d 853, 864 (quoting *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 974 (10th Cir. 2002)) (emphasis removed).

[42] *Cf.* Def.'s Mot. 9–10; Def.'s Reply 15–16.

[43] July 9, 2023 Email from Carole Cross to Jamie Hamilton.

[44] *See 1-800 Contacts*, 722 F.3d at 1243–44, 1247–49 (holding a click through rate of 1.5% on Google Ads displaying allegedly infringing marks was insufficient to show initial-interest confusion and finding a higher rate of confusion from survey data to be insufficient evidence); *Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1149 (10th Cir. 2013) (holding that survey data showing "[n]et confusion rates of 6.5% and negative 0.5% do not create a genuine factual issue of likelihood of confusion."); *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1535–36 (10th Cir. 1994) (holding that "[d]e minimis evidence of actual confusion does not establish the existence of a genuine issue of material fact regarding likelihood of confusion" but that "none of the six factors alone is dispositive").

### 2.     The Strength or Weakness of the Mark

This factor is "[p]erhaps the second most important" factor bearing on the likelihood of consumer confusion.[45] "The stronger the mark, the more likely it is that encroachment on it will produce confusion."[46] This is because "[a] strong trademark is one that is rarely used by parties other than the owner of the trademark, while a weak trademark is one that is often used by other parties."[47] There are two types of strength: conceptual strength and commercial strength.[48]

### i.     Conceptual Strength

"Conceptual strength is measured on a spectrum of distinctiveness ranging along the following five categories (from least to most distinctive): (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful."[49] "The categorization of a mark is a factual question."[50] "A generic term is a term used to describe the relevant type or class of goods."[51] Next, "[a] descriptive mark describes a characteristic of a product or service, and is protected only where secondary meaning is shown."[52] Third, a suggestive mark "suggests rather than describes a characteristic of the product and requires the consumer to use imagination and perception to determine the product's nature."[53] Finally, "[a]n arbitrary mark has a common

---

[45] *Vail Assocs.*, 516 F.3d at 866.

[46] *First Sav. Bank, F.S.B. v. First Bank System, Inc.*, 101 F.3d 645, 653 (10th Cir. 1996) (quoting *Champions Golf Club, Inc. v. The Champions Golf Club*, 78 F.3d 1111, 1117 (6th Cir. 1996)).

[47] *Id.* (quoting *Universal Money Ctrs.*, 22 F.3d at 1533).

[48] *Hornady Mfg. Co., Inc. v. Doubletap, Inc.*, 746 F.3d 995, 1007 (10th Cir. 2014).

[49] *Id.*

[50] *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1216 (10th Cir. 2004).

[51] *First Sav. Bank*, 101 F.3d at 654.

[52] *Id.* at 654–55; *see also Sally Beauty Co.*, 304 F.3d at 976 ("A descriptive mark identifies a characteristic or quality of an article or service, such as its color, order, function, dimensions, or ingredients.").

[53] *First Sav. Bank*, 101 F.3d at 655; *see also* 1 McCarthy on Trademarks and Unfair Competition § 11:64 ("In the author's view, examples of hypothetical suggestive terms requiring some degree of imagination include: GLOW for skin cream; ORACLE for computer software; PENGUIN for food freezers; SAMSON for weight training machines; and VENUS for a beauty salon.").

8

meaning unrelated to the product for which it has been assigned . . . while a fanciful mark . . . signifies nothing but the product."[54]

Rock Tops argues that Bedrock's mark is weak because it is descriptive and Bedrock lacks evidence of secondary meaning.[55] Bedrock argues that "Bedrock Quartz" is not merely descriptive—though it does not classify it—and that the term is rarely used by others within the Utah market.[56]

For starters, it is clear that "Bedrock Quartz" is not an arbitrary or fanciful mark, as the term has a meaning that is at least somewhat related to the product being sold—stone countertops. On the other end of the spectrum, it is equally clear that "Bedrock Quartz" is not generic, as the term does not merely describe the products sold by Bedrock. Thus, the issue centers on whether "Bedrock Quartz" is descriptive or suggestive. The Tenth Circuit has observed that "'[t]he distinction between descriptive and suggestive marks is difficult' and 'often based on intuitive reactions rather than analytical reasoning[.]'"[57] "[S]uggestive terms 'require the buyer to use thought, imagination, or perception to connect the mark with the goods,' whereas descriptive terms '*directly convey* to the buyer the ingredients, qualities, or characteristics of the product.'"[58]

---

[54] *First Sav. Bank*, 101 F.3d at 655.
[55] Def.'s Mot. 13–16.
[56] Pl.'s Opp'n 29–32.
[57] *Water Pik*, 726 F.3d at 1152 (quoting *Educ. Dev. Corp. v. Econ. Co.*, 562 F.2d 26, 29 (10th Cir. 1977)) (alteration in original).
[58] *Hornaday Mfg.*, 746 F.3d at 1007 (quoting *Water Pik*, 726 F.3d at 1152–53).

"Bedrock Quartz" falls on the descriptive side of the spectrum. "Quartz" is a common mineral[59] that is used in countertops.[60] "Bedrock" refers to solid rock buried beneath soil and loose rock.[61] The parties dispute whether "bedrock" has a meaning within the context of countertop products.[62] Even assuming that it does not,[63] it requires little imagination to connect the mark with the goods. "Bedrock Quartz" directly describes materials used in some of Bedrock's countertops.[64] That some of Bedrock's products are not made of quartz[65] and not all of "Bedrock Quartz" is descriptive does not change the result.[66] Accordingly, Bedrock must show secondary meaning in order to show a strong mark.

### ii.   Commercial Strength

"Commercial strength is 'the marketplace recognition value of the mark.' It is analogous to secondary meaning."[67] The Tenth Circuit has held that when evaluating secondary meaning, courts should consider direct evidence of consumer recognition as well as "circumstantial evidence regarding: (1) the length and manner of the mark's use, (2) the nature and extent of

---

[59] *See* Quartz, Encyclopedia Brittanica, https://www.britannica.com/science/quartz [https://perma.cc/4E6T-7NCB] (last visited July 31, 2024); *see also* Quartzite, Encyclopedia Brittanica, https://www.britannica.com/science/quartzite [https://perma.cc/4QWH-YMDQ] (last visited July 31, 2024)

[60] *See* Schmoekel Decl. ¶ 13; Jorgensen Decl. ¶ 11; Schmoekel Dep. 16:21–17:21. The parties appear to agree that "quartz" in the context of countertops refers to an engineered stone, whereas "quartzite" refers to natural stone. *See id.*; Pl.'s Opp'n 4; Def.'s Reply 3.

[61] Bedrock, Encyclopedia Brittanica, https://www.britannica.com/science/bedrock [https://perma.cc/8MRM-JKJ7] (last visited July 31, 2024).

[62] *See* Pl.'s Opp'n 3 (citing Jorgensen Decl. ¶ 10); Def.'s Reply 3.

[63] *But see* Schmoekel Dep. 51:11–53:17 (suggesting that Rock Tops' supplier sold a product called "bedrock quartz").

[64] Jorgensen Decl. ¶ 7.

[65] 1 McCarthy on Trademarks and Unfair Competition § 11:16 n.16 (compiling cases for the proposition that "[a] term is 'descriptive' if it directly describes *any* of the goods or services with which it is used (emphasis added)); *see also Educ. Dev. Corp.*, 562 F.2d 26, 29 (10th Cir. 1977) ("A mark to be merely descriptive need not directly convey all of a product's characteristics, uses, or functions but need only impart directly a crucial, important aspect of the product.").

[66] *See* 1 McCarthy on Trademarks and Unfair Competition § 11:24 (compiling a list of marks held to be descriptive).

[67] *Hornaday Mfg.*, 746 F.3d at 1007–08.

10

advertising and promotion of the mark, and (3) the efforts made to promote a conscious connection, in the public's mind, between the mark and a particular product."[68]

Neither party has presented any direct evidence relevant to consumer recognition of "Bedrock Quartz." Bedrock points to some circumstantial evidence of commercial strength. Namely, Mr. Alan Jorgensen—Bedrock's CEO—declares that Bedrock has been operating since 2003 with the name "Bedrock Quartz" and that it has spent over $4 million on advertising since 2003.[69] Rock Tops does not provide any evidence of its own to refute these facts. Instead, it argues that Mr. Jorgensen "can only speculate as to consumers' perception" of the trademark and that, as Bedrock's CEO, he is biased.[70] However, Mr. Jorgensen offers specific statements based on his personal knowledge as Bedrock's CEO that the Tenth Circuit has recognized provide circumstantial evidence of commercial strength. Whether he has personal knowledge of consumers' perception is immaterial. Therefore, although "Bedrock Quartz" is a descriptive mark, because Bedrock has presented some unrebutted evidence of commercial strength, the court finds this factor to weigh in favor of Bedrock.

### 3.   The Degree of Care Likely Exercised by Consumers

"When consumers exercise a high degree of care in selecting [products], the likelihood of confusion shrinks."[71] For purposes of this case, the court considers the likelihood of confusion from the perspective of a consumer's initial interest.[72] Here, neither party has offered evidence—

---

[68] *Id.* at 1008.
[69] Jorgensen Decl. ¶¶ 5, 12.
[70] Def.'s Reply 19.
[71] *Vail Assocs.*, 516 F.3d at 872.
[72] *See id.* (suggesting that while "[t]raditionally, our inquiry has focused on the 'consumer's degree of care exercised at the time of purchase,'" initial interest confusion is evaluated at the moment of a consumer's initial interest (quoting *Sally Beauty Co.*, 304 F.3d at 975)).

as opposed to attorney argument—that speaks to the degree of care exercised by purchasers. Rock Tops initially argues only that countertops are expensive and that customers presumably exercise a great deal of care when purchasing them.[73] But Rock Tops cites no record evidence of the cost of countertops. Bedrock correctly points out that the degree of care at the time of a purchase is not at issue, but that the court should consider the issue from the perspective of a customer's initial interest.[74] Beyond that, however, Bedrock does not cite to any evidence or make any argument that consumers here would or would not exercise any degree of care when searching for its products. And on reply Rock Tops suggests only that "it is reasonable to infer that a prudent internet user would examine the advertisement prior to clicking on it."[75] But Rock Tops cites no evidence to support its proffered inference. Accordingly, in the absence of any record evidence cited by the parties supporting the degree of care likely exercised by consumers, the court considers this factor to be neutral.

### 4. Intent of the Alleged Infringer

The "proper focus" under this factor "is whether defendant had the intent to derive benefit from the reputation or goodwill of plaintiff."[76] Direct evidence is not required, and instead, intent may be inferred from the circumstances of the use, including a high degree of similarity between the marks.[77] "Proof that a defendant chose a mark with the intent of copying the plaintiff's mark may, standing alone, justify an inference of likelihood of confusion."[78]

---

[73] Def.'s Mot. 10–11.
[74] Pl.'s Opp'n 27–28.
[75] Def.'s Reply 18.
[76] *Jordache Enters. Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1485 (10th Cir. 1987) (quoting *Sicillia Di R. Biebow & Co v. Cox*, 732 F.2d 417, 431 (5th Cir. 1984)).
[77] *See Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 927–28 (10th Cir. 1986).
[78] *Sally Beauty Co.*, 304 F.3d at 973.

12

Rock Tops argues that because it did not select the words or phrases that were to be used in connection with its Google Ads, it had no intent to benefit from Bedrock's mark.[79] Mr. Blair Schmoekel—Rock Tops' CEO—declares that Google Ads automatically pulled keywords from Rock Tops' website and the website of its supplier, and that Rock Tops lacked control over what was displayed in the advertisements.[80] But in his deposition, Mr. Schmoekel stated that he had no involvement with Google Ads, and that his only knowledge about the service came from "[a]n amalgamation of being in business for 26 years."[81] And a representative of Rock Tops' marketing company testified in her deposition that Google Ads can create its list of keywords in numerous ways, including manually or by querying Google itself for a list of keywords.[82] But she denied that Google Ads uses DKI to automatically search a website in order to generate a keyword list.[83] Indeed, Rock Tops concedes on reply that its proffered facts regarding DKI were incorrect.[84]

Further, an internal email from Rock Tops' marketing agency suggests that "[t]he keyword 'bedrock quartz' was added to the Rock Tops Google Adwords account on May 11, 2022 by Rock Tops through someone using the email address marketing@rocktopssurfaces.com."[85] And in September, Rock Tops requested that "bedrock quartz" be removed from headlines, but be kept as a keyword.[86] Finally, a representative from Rock Tops' marketing agency testified that in September, it had received communications from

---

[79] Def.'s Mot. 8–9.
[80] Schmoekel Decl. ¶¶ 5–7.
[81] *See* Schmoekel Dep. 14:14–15:19
[82] Cross Dep. 13:19–15:15; *see also id.* 17:10–18:15.
[83] *Id.* at 15:16–16:14.
[84] *See* Def.'s Reply 17.
[85] July 9, 2023 Email from Carole Cross to Jamie Hamilton.
[86] Sept. 15, 2022 Email from James Kearl to Jamie Hamilton and Mandy Kaur.

Rock Tops suggesting that Rock Tops specifically wanted to compete better with Bedrock.[87] A

reasonable jury could conclude that these facts show that Rock Tops intended to benefit from

Bedrock's trademark.

Defendant suggests that its implementation of NKS to dissociate "bedrock quartz" from

its advertisements suggests that it lacked intent to derive a benefit from Bedrock's mark.[88]

Indeed, Mr. Schmoekel declares that Rock Tops implemented NKS after one of its "employees

saw one of their ads displaying the phrase 'Bedrock Quartz' after making a Google search."[89]

However, that statement does not accurately reflect the record discussed above. Indeed, Rock

Tops did not actually implement NKS until after it received a demand letter from Bedrock.[90] On

this record, drawing inferences in Bedrock's favor, implementation of NKS only after receiving

a demand letter is not probative of earlier intent, even if Rock Tops' employee noticed the issue

well before the demand letter, especially when viewed in light of the evidence that is highly

probative of intent. Accordingly, this factor weighs in favor of Bedrock.

### 5.   Similarity of Products Being Marketed

Both parties agree that they are likely direct competitors who provide highly similar

products.[91] Accordingly, this factor weighs in favor of Bedrock.

---

[87] Cross Dep. 28:8–29:22.
[88] Def.'s Mot. 8–9.
[89] Schmoekel Decl. ¶ 17.
[90] *See* Nov. 16, 2022 Letter from Jared J. Braithwaite to Rock Tops; July 9, 2023 Email from Carole Cross to Jamie Hamilton (stating that NKS was implemented on November 17, 2022).
[91] *See* Def.'s Mot. 10; Pl.'s Opp'n 27.

14

### 6.     Degree of Similarity of the Marks

"The similarity of the marks is the '. . . most important factor.'"[92] "The degree of

similarity is tested on three levels as encountered in the marketplace: sight, sound, and

meaning."[93] Defendant first argues that its actual mark—"Rock Tops"—bears no similarity to

"Bedrock Quartz."[94] That argument is irrelevant. Bedrock does not accuse Rock Tops of

infringing its trademark through the use of "Rock Tops."

Next, while Rock Tops acknowledges that its use of "Bedrock Quartz" in a Google Ad is

similar in sight and sound to Bedrock's trademark, it argues that the contextual meaning is

different because as Rock Tops uses it, the term refers to a possible countertop material choice.[95]

But, as Plaintiff points out,[96] Rock Tops' use of "bedrock quartz" in the Google Ad does not

suggest that "bedrock quartz" is a countertop material—it simply reads "Bedrock Quartz – Visit

Our New Park City Store."[97] On these facts, a reasonable jury could find a high degree of

similarity between the marks' meaning, as well as in their sight and sound. Thus, this factor

weighs in favor of Bedrock at this stage. However, in *1-800 Contacts*, the Tenth Circuit observed

that "once consumers see the results page, the substantial dissimilarity" between Bedrock's and

Rock Tops' websites "can be expected to greatly reduce the chance that consumers will think

that the parties are related enterprises."[98] As such this factor is of "minor relevance."[99]

---

[92] *Hornaday Mfg. Co.*, 746 F.3d at 1001 (quoting *King of the Mountain Sports*, 185 F.3d at 1091).
[93] *First Sav. Bank*, 101 F.3d at 653; *accord Jordache Enters.*, 828 F.2d at 1484 (quoting *Beer Nuts*, 805 F.2d at 925).
[94] Def.'s Mot. 7.
[95] *Id.*
[96] Pl.'s Opp'n 22.
[97] *See* Jorgensen Decl. ¶ 13.
[98] *1-800 Contacts*, 722 F.3d at 1245.
[99] *Id.*

In sum, four of the *King of the Mountain* factors weigh in favor of Bedrock: the strength

of the mark, the intent of the alleged infringer, the similarity of the products, and the similarity of

the marks. The court considers the degree of care and actual confusion factors to be neutral. But

even if those two factors favored Rock Tops, the weight of the other factors when considered

together suggests that a genuine dispute of fact exists as to whether consumers were likely to be

confused. While "[t]he tilt of the scales does not determine the issue,"[100] several of the most

important factors on this record weigh in favor of Bedrock. Here, the parties are direct

competitors selling highly similar products and the evidence suggests that Rock Tops

intentionally used Bedrock's mark, which has developed commercial strength. Rock Tops has

failed to show that likelihood of confusion must be resolved in its favor as a matter of law.

Therefore, likelihood of confusion is left for the jury.

## B.   Fair Use

Rock Tops argues that it is entitled to summary judgment on its fair use defense.[101]

Section 33(b)(4) of the Lanham Act provides an affirmative defense when a party uses a term or

device "otherwise than as a mark . . . [and the] term or device . . . is descriptive of and used fairly

and in good faith only to describe the goods or services of such party[.]"[102] "A term or symbol is

used as a trademark when the producer uses it to identify the source of his goods to the public

and to distinguish those goods from others."[103]

---

[100] *Hornady Mfg.*, 746 F.3d at 1008.
[101] Def.'s Mot. 16–17.
[102] 15 U.S.C. § 1115(b)(4).
[103] *Beer Nuts*, 711 F.2d at 938.

First, it is worth note that Rock Tops did not plead a fair use defense. Under Federal Rule of Civil Procedure 8(c), a party must raise any affirmative defense in their answer.[104] Thus, Rock Tops waived any fair use defense by failing to plead it.[105]

In any event, a genuine dispute of material fact exists as to whether Rock Tops used the term "bedrock quartz" only to describe its goods rather than as a trademark. The Google Ad at issue in this case states "Bedrock Quartz – Visit Our Park City Store."[106] The advertisement thus does not on its face refer to a product. A reasonable jury could conclude that this use was as a trademark and did not merely describe goods. Likewise, in its motion, Rock Tops does not point to any evidence of good faith.[107] Accordingly, summary judgment is improper.

## II.    Deceptive Trade Practices

Utah law provides for a cause of action for individuals injured by a deceptive trade practice.[108] A "deceptive trade practice" occurs "when, among other things, in the course of a person's business, vocation, or occupation that person: . . . causes likelihood of confusion or of misunderstanding as to affiliation, connection, association with, or certification by another."[109]

Rock Tops argues that the court should use the *King of the Mountain* factors to evaluate likelihood of confusion.[110] Bedrock apparently agrees.[111] Accordingly, the result is the same.

---

[104] Fed. R. Civ. P. 8(c).

[105] *See Greer v. Moon*, 83 F.4th 1283, 1294 n.10 (10th Cir. 2023) (holding defendants waived copyright fair use defense by failing to plead it).

[106] Jorgensen Decl. ¶ 13.

[107] *Cf.* Def.'s Mot. 16–17.

[108] Utah Code § 13-11a-4(2).

[109] *Id.* § 13-11a-3(1)(c).

[110] Def.'s Mot. 17–19.

[111] *See* Pl.'s Opp'n 35 (arguing only that the result should be the same between its Lanham Act claim and its deceptive trade practices claim).

## III.   Trademark Dilution Under Utah Law

Utah law provides for a civil action for trademark dilution for unregistered marks.[112]

Rock Tops argues that the tests under both federal and state law are identical.[113] Bedrock

apparently agrees.[114] Assuming that the tests are the same, the result is again the same.

In summary, to obtain summary judgment, Rock Tops had to demonstrate that "there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."[115] It has failed to do so.

### ORDER

For the forgoing reasons, the court DENIES Defendant's motion for summary

judgment.[116]

Signed July 31, 2024.

BY THE COURT

David Barlow
United States District Judge

---

[112] Utah Code § 70-3a-403. Trademark infringement is available only for registered marks. *See id.* § 70-3a-402 (providing for infringement actions brought by the "registrant"); *id.* § 70-3a-103(1)(f) ("'Registrant' means: (i) the person to whom the registration of a mark under this chapter is issued; and (ii) a legal representative, successor, or assign of the person described in Subsection (1)(f)(i).").
[113] Def.'s Mot. 19.
[114] *See* Pl.'s Opp'n 35 (arguing only that the result should be the same between its Lanham Act claim and its state-law infringement claim).
[115] Fed. R. Civ. P. 56(a).
[116] ECF No. 19.